The Wiggins Ferry Company v. The Chicago & Alton Railroad Company.

THE WIGGINS FERRY COMPANY, *Appellant*, v. THE CHICAGO & ALTON RAILROAD COMPANY.

1. **Liability of Assignee of a Contract.** A ferry company entered into a contract with a railroad company, whereby it granted to the railroad company a site for a depot and right of way, and the railroad company, on its part, agreed to give to the ferry company the ferrying of all goods required to be transported between certain points. The contract contained a provision authorizing its assignment, and stipulating that all its covenants should be binding on the assignee. An assignment was subsequently made on the express condition that the assignee should take subject to all the covenants. The contract had been entered into in the first instance at the request of the assignee and with a view to the assignment. *Held*, that while the assignee might not be bound by the covenant in relation to ferrying as a covenant running with the land, yet he was bound by virtue of the other stipulations, and was liable for a breach of such covenant.

2. **Railroad Companies:** POWER TO CONTRACT WITH CONNECTING LINES. A railroad company has power to contract with another corporation to complete the transportation of goods whose destination is beyond the terminus of its own line.

3. **Extent of the Contract of 1864 between the Wiggins Ferry Company and the Chicago & Alton Railroad Company.** The ferry company having by its charter an exclusive right to ferry all freights passing either way between the city of St. Louis and the company's lands on the opposite (Illinois) shore of the Mississippi river, entered into a contract with the railroad company, by which the railroad company agreed that it would "always employ said

ferry company to transport across said river all persons and property which may be taken across the said river either way to or from the Illinois shore, either for the purpose of being transported on said railroad, or having been brought to said river upon said railroad, *    * so that said ferry company shall have the profits of the transportation of all such passengers and property taken across said river either way, by said railroad company, and that no other than said ferry company shall ever, at any time, be employed by said railroad company to cross any passengers or freights coming or going on said road." Another clause of the contract declared that the object of the ferry company in making the contract was to secure to itself " the ferrying business between the Illinois and the Missouri shores opposite the city of St. Louis, of all the freights and passengers carried or to be carried " by the railroad company. *Held,* that the railroad company, by this contract, bound itself to employ the ferry company to transport all the freight and passengers it might have crossing either way between said city and the Illinois shore at any point opposite, and not merely such as it might have crossing between the city and the ferry company's lands, and for this purpose it bound itself to bring all its freights and passengers to the said ferry.

4. **A Contract held not void as against Public Policy, or in Restraint of Trade.** A railroad company requiring a ferry to complete the transportation of its freights and passengers at a terminal point, entered into a contract with a ferry company by which it bound itself to give all its ferrying business at that point to that company, and agreed not to employ any other. The ferry company, on its part, agreed to "furnish and maintain wharf and steam ferry boats sufficient to do with promptness and dispatch all the ferrying of passengers and freight requiring it." *Held,* that this contract was not void as being against public policy, because it bound the ferry company to furnish all the facilities that the public interests required. Nor was it void as being in restraint of trade. Contracts are held void on this ground only when they operate a general restraint of trade. This contract was limited in its operation to a single place, and at that place did not wholly prohibit the ferrying business, but only limited it to one company.

5. **Avoidance of Contracts as against Public Policy.** Before a party who is enjoying the fruits of a contract can avoid liability thereunder on the ground that it is against public policy, he must make it clearly manifest that this objection is well founded, and must also restore to the other party all that he received as a consideration for the promise which he seeks to avoid.

6. **Transportation Contracts** : IMPROVEMENTS IN METHODS OF TRANSPORTATION : PARTIES BOUND TO ADOPT THEM. A railroad company

APRIL TERM, 1881.  391

The Wiggins Ferry Company v. The Chicago & Alton Railroad Company.

and a ferry company entered into a contract for the ferrying of persons and property by which the ferry company bound itself to "furnish and maintain wharf and steam ferry boats sufficient to do with promptness and dispatch all the ferrying of passengers and freight requiring it." At the time this contract was made all goods intended for transportation over this ferry were unloaded from the cars and placed on wagons. Subsequently a system of transferring loaded cars came into vogue. *Held,* that under this contract the railroad company had a right to demand of the ferry company that it adopt the new system. It was bound to adopt any improvements whereby transportation would be made cheaper, safer and more expeditious.

7. ————. The court holds the contract of March 9th 1866, between the Chicago & Alton Railroad Company and the Madison County Ferry Company to have been made by the railroad company in fraud of the rights of the Wiggins Ferry Company under its contract of April 28th, 1864, with the railroad company.

8. ————: FRAUD. A railroad company having entered into a contract with a ferry company for the ferrying of passengers and freights, afterward, with the fraudulent purpose of diverting traffic from the ferry and depriving the ferry company of the benefits of the contract, so arranged its business as to make it the interest of shippers to order their goods transferred by another ferry. *Held,* that under these circumstances the railroad company could not excuse its failure to deliver goods for ferrying according to the contract by showing that the shippers had ordered them sent by the other ferry.

9. **Referee's Report.** The report of a referee is equivalent to a special verdict, and if there is evidence tending to establish the facts as found, it will not be disturbed on appeal as being against the weight of evidence.

10. **Contract**: MEASURE OF DAMAGES. The plaintiff, a ferry company, entered into a contract with defendant, a railroad company, whereby it bound itself at all times to keep sufficient ferry boats and appliances to do all the railroad company's ferrying, and the railroad company, on its part, bound itself to give all its ferrying to that company. The ferry company was prepared at all times to comply with the contract, but the railroad company gave its ferrying to another company. In an action for breach of contract; *Held,* that the profits on all the business thus diverted were the true measure of damages.

*Appeal from St. Louis Court of Appeals.*

REVERSED.

*Glover & Shepley* for appellant.

1. The contract sued on is not limited to Bloody Island. Bloody Island comprises but a part of the Illinois shore opposite St. Louis. The contract binds the railroad company to give plaintiff all its ferriage for the whole length of the Illinois shore opposite St. Louis. The contract is valid unless some cause of invalidity is shown, and the burthen of showing this is on the railroad company.

2. The contract is not *ultra vires.* The railroad company was authorized by its charter " to take, use and make arrangements for the transportation of freight and passengers carried, or to be carried, upon said railroad, or otherwise, from Alton to St. Louis, Missouri, and for this purpose to construct, own and use such boat or boats as may be necessary." This statute extended the corporate franchise of the railroad company beyond its rail terminus on the Illinois shore to the city of St. Louis. That which a corporation has power to do, it is bound to do. Field Corp., §§ 500, 504; *U. P. R. R. Co. v. Hall,* 91 U. S. 343; *King v. Severn, etc., R. R. Co.,* 2 B. & Ald. 646; *Vincent v. R. R. Co.,* 49 Ill. 33; *Mayor v. Marriott,* 9 Md. 160. It was, therefore, bound to arrange for the transportation of its freights to St. Louis; and it was its duty to make some permanent and reliable arrangement. This it could not have done without agreeing to give all its ferriage to some one ferry company ; for no company would go to the expense of equipping itself sufficiently to do the work without a guaranty of receiving the whole of it. If the power exists to enter into a contract, the terms of it are referred to the judgment and discretion of the corporation, and it is no more restrained than that of a natural person. Field Corp., § 246; *Railroad v. Richmond,* 19 Wall. 584; *Western Bank v. Tallman,* 17 Wis. 530; *Argenti v. San Francisco,* 16 Cal. 255; *Blunt v. Walker,* 11 Wis. 334; *Richmond v. Dubuque,* 26 Iowa 191; *Aikin v. Blanchard,* 32 Barb. 527;

*Connecticut v. Cleveland*, 41 Barb. 9. When a contract made in excess of corporate powers has been executed, the plea of *ultra vires* will not be heard. Field Corp., §§ 263 to 266, inclusive. The conveyance to the railroad of $130,000 real estate is an answer to such a plea in this case.

3. The contract is not void for being contrary to public policy. This is an objection on which judges proceed with caution. *Davis v. Bank*, 2 Bing. 393; *s. c.*, 9 Eng. Com. Law 452. There is nothing in the contract that requires the railroad company to abandon any of its charter rights as to operating its road, running trains, locating stations or contracting to deliver freights. The evidence shows not only that it was no disadvantage to the public to have freights and passengers delivered by plaintiff's ferry, but that that was the shortest, cheapest and most expeditious route. Arrangements could have been made to transfer loaded cars by plaintiff's ferry, and if defendant had lived up honestly to its contract it would have asked that such arrangements be made, and they would have been made.

4. The station for car transfer at Venice was not the suggestion of public policy and public good, but was a cunning contrivance of the railroad company to excuse its violation of the contract. The evidence abundantly shows this.

5. The railroad company, having a carrying franchise, which it is bound by its charter to exercise to and from St. Louis, cannot inject a connecting line between its termini in avoidance of any of its duties or liabilities. But if the case is one for the existence of a connecting line, the contract entered into with the Wiggins Ferry Company to transport its freights beyond its terminus as a connecting line is a valid contract, which it is bound to perform. Railroads have power to contract for transportation beyond their termini and upon connecting lines. *Wheeler v. San Francisco*, 31 Cal. 46; *Bank v. Augusta*, 49 Me. 507; *Shawmut Bank v. Plattsburg, etc.*, 31 Vt. 491; *Morse v. Brainerd,*

41 Vt. 550; Hutchinson Carriers, 147, 148, 149, 150, 151. The power to carry beyond its lines entitles the railroad to make a valid contract for the purpose. *Schroeder v. Hudson*, 5 Duer 55.

6. The plaintiff was not bound to provide car transfer for defendant without request. The railroad company sets up a plea that the plaintiff did not provide car transfer, and this released it from the contract. Sometimes it puts an objection thus: The contract did not provide for car transfer, and, therefore, defendant had no right to it. Neither objection is good. If a contract is valid when made, a change in the conditions of business will not make it invalid. 19 Wall. 584; *The Dubuque, etc., v. Richmond, etc.*, 16 Wall. 678. If this was not so, no contract would long be valid. If a discovery in art or science, invention of a motive power, a new application of a known power, or any improvement in methods of doing business would avoid a contract, no contract would long be valid. The world moves, but forms are not essentials. Public institutions, or *quasi* public institutions or instrumentalities, are specially bound to keep abreast with the progress of events, so far as to avail of all tried successful improvements adopted in use. Not only may they do it, but they may be compelled to it, and will be held guilty of negligence if they fail to do it. *Steinweig v. Erie Ry. Co.*, 43 N. Y. 123; *Levering v. U. T. Co.*, 42 Mo. 88; *New Jersey, etc., v. Merchants' Bank*, 6 How. 344; *Empire T. Co. v. Wamsutta, etc.*, 63 Pa. St. 14; Hutchinson on Carriers, § 529; *Meier v. R. R. Co.*, 64 Pa, St. 225; *Hegeman v. R. R. Co*, 16 Barb. 353 : *St. Louis. etc.,v. Gilham*, 39 Ill. 455. Notwithstanding, it is evident that in the initial period of introducing an improvement, a carrier has no right to immediately force it upon the public. When the case is one of contract, as that now under consideration, the concurrence of both parties is needful; and if one of them refuses to concur, denies the right and power of the other party to make the improvement for him, and will not have it made for him, he will

not be allowed to complain it was not made for him. Nor should he in such case claim a release from his contract, according to old methods.

7. The contract is not void, as being in restraint of trade. There is no element of a restraint of trade in it. It was the duty of defendant to carry their passengers and freights to and from St. Louis. It was bound to make some arrangement to that end. We do not see that any wiser or better one could have been made. We have no evidence that any other could have been made. To agree to deal with one person was never held to be a restraint of another's trade. *Jones v. Edney*, 3 Camp. 285; *Morris v. Colman*, 18 Ves. 437. The restraint, to make a contract void, must be a general prevention of some one's trade, not limited in space. *Pierce v. Fuller*, 8 Mass. 223; *Hayward v. Young*, 2 Chitty 407; *Davis v. Mason*, 5 T. R. 118; *Hitchcock v. Coker*, 6 Ad. & Ellis 455; *Bunn v. Guy*, 4 East 190; *Perkins v. Lyman*, 9 Mass. 522; *Rannie v. Irvine*, 7 Man. & Gr. 969; *Dunlop v. Gregory*, 10 N. Y. 241. *Palmer v. Stebbins*, 3 Pick. 188; *Warren v. Jones*, 51 Me. 146; *Alger v. Thacher*, 19 Pick. 51; *Bowser v. Bliss*, 7 Blackf. 344; *Bradley v. Denton*, 3 Wis. 557; *Costigan v. Mohawk*, 2 Denio 610; *Shannon v. Comstock*, 21 Wend. 457; *Dean v. Ritter*, 18 Mo. 182; *Bailey v. Damon*, 3 Gray 92; *Leeman v. Lloyd*, 14 L. J. (N. S.) 165; *Presbury v. Fisher*, 18 Mo. 50; *Richmond v. Dubuque*, 33 Iowa 422; *s. c.*, 26 Iowa 191.

8. The Chicago & Alton Railroad Company is bound by the contract of 1864, as fully as the Alton & St. Louis Railroad Company was bound by it. *Burton v. Wells*, 30 Miss. 689; *Attix v. Pelan*, 5 Clarke (Iowa) 336; *Goodwin v. Gilbert*, 9 Mass. 510; *Guild v. Leonard*, 18 Pick. 511; *Pike v. Brown*, 7 Cush. 133; *Aikin v. R. R. Co.*, 26 Barb. 289; *Stow v. Wyse*, 7 Conn. 214; *Davis v. Calloway*, 30 Ind. 112; *Felton v. Dickinson*, 10 Mass. 287.

9. The plaintiff was entitled as damages to the full ferriage rates of all freights to which plaintiff was entitled under the contract, and which plaintiff was not employed

to ferry. *Greene v. Waggoner*, 2 Hilton 297. The plaintiff was employed to work for a specified period, and being dismissed without fault, before the end of the time, was entitled to recover the full contract price, defendant failing to show the plaintiff could have got other employment. *King v. Steiren*, 44 Pa. St. 99; *Pond v. Wyman*, 15 Mo. 175; *Nearns v. Harbert*, 25 Mo. 352; *Little v. Mercer*, 9 Mo. 218; *Ward v. Ames*, 9 John. 138; *McDaniel v. Parks*, 19 Ark. 671; *Armfield v. Nash*, 31 Miss. 361; *Costigan v. Mohawk*, 2 Denio 610; *Ashburner v. Balchen*, 7 N. Y. 262; *Webb v. Coonce*, 11 Mo. 9. One who agrees to furnish cargo, and fails, must pay damages. *Puller v. Staniforth*, 11 East 232; *Dubuque v. Richmond*, 26 Iowa 191; *Medbery v. Sweet*, 3 Chand. (Wis.) 231. In such a case as this there is no mitigation of damages for what plaintiff could have made. The plaintiff's boats are not general boats—are confined to a ferry business. They cannot go abroad in search of other freights. They can only run from shore to shore— run empty if freights are not offered. Every expense of time, labor and money was incurred to carry the defendant's freights, and plaintiff was entitled to full ferry rates.

*James O. Broadhead* for respondent.

1. To what did the contract extend? (*a*) Plaintiff did not agree to transfer any cars over the river. No such thing had ever been done; nor was there any provision for its being done. On the contrary, plaintiff, by the contract, reserved a space 260 feet wide between defendant's depot grounds and the river for a wharf; and over this defendant could not lay a track, so that its cars could not reach plaintiff's boats. (*b*) The plaintiff did not contract, and could not contract, to perform ferry service outside of and beyond the point or locality at which it could operate its ferry or perform such service. Such a contract would have been *ultra vires* and void; consequently the railroad company only contracted as to ferrying to be done at the point

of plaintiff's ferry, or within its locality. Venice is outside of that locality. Plaintiff's charter being perpetual, its grant of franchises must be strictly construed. It must be confined to the powers expressly given it, withholding all others, to be used for the public good, as other demands arise, and as other, cheaper, improved or more convenient modes of transportation may be demanded. This rule of construction applies to the kind and mode of ferriage contemplated, and to the place or locality contemplated at which the ferry service was contracted for, as well as the extent and nature of all other stipulations of the contract. *St. Louis Gaslight Co. v. St. Louis,* 46 Mo. 133 ; *Bridge Proprietors v. Hoboken,* 1 Wall. 117, 124, 146 ; *Thompson v. R. R. Co.,* 3 Sanf. Ch. 625 ; *McRee v. R. R. Co.,* 2 Jones L. (N. C.) 186. If the contract is not confined to the locality of plaintiff's ferry, then it may be made to apply to Alton or any other point on the river, as well as Venice, or the Madison County Ferry. If the contract is not confined to the mode of ferrying in use at its ferry, and the only mode which, by the terms of the contract, could be exacted of it, or indeed could be used, then it would extend to transportation by the bridge, a tunnel, or any other improved mode of crossing the river, forever, for the contract is perpetual. (c) The railroad company did not, by the contract, agree to become a procurer, runner or drummer for the ferry company—to procure and control for it the ferriage of all persons and property which might come or go over the road to or from St. Louis by any route. The covenant is to employ plaintiff's ferry, and not to employ any other. This, of course, implies the power to employ—in other words, refers to such ferriage as should be under the control of defendant, and necessarily excludes the idea of procuring the ferriage from such persons as were not disposed to have their freight transported over plaintiff's ferry. Therefore, where shippers directed their freight to be transported over the Madison County Ferry, or to be sent to St. Louis *via* Venice, the defendant might permit

it to be done, and was authorized to discharge the freight at Venice to be transported over the river by the Madison County Ferry.

2.    The contract, as plaintiff claims, and must necessarily claim it to be, (on the theory of this action,) is *ultra vires*—vicious, against public policy and void. (*a*) Contracts made by individuals and private corporations in restraint of trade, which are general, are void. The true test is, whether the restraint is such only as to afford fair protection to the parties, or whether it is so broad as to " interfere with the interests of the public." *Morris Run Coal Co. v. Barclay Coal Co.*, 68 Pa. St. 173; *s. c.*, 8 Am. Rep. 159; *Crawford v. Wick*, 18 Ohio St. 190; *Bennett v. Dutton*, 10 N. H. 481; *White v. Hunter*, 23 N. H. 134; *Weld v. Lancaster*, 56 Mo. 453; *Skeels v. Phillips*, 54 Ill. 315; *Van Dyck v. Hewitt*, 1 East 96. (*b*) Much more rigid is the rule in regard to common carriers, such as the owners of ships, steamboats and other crafts, the proprietors of stage coaches, etc. On becoming common carriers, they assume higher obligations to the public. If a common carrier finds that an improved mode or route is provided, by which he may secure cheaper transportation, more conveniently and readily serve the public, or meet the increased demand for trade or travel, it is his highest duty to do so; and if a third person has made a contract with him, by the terms of which he would be hindered therefrom, such contract is at war with the best interest of the public, tending to prevent the common carrier meeting his first and highest obligations, and to influence and restrain him in the discharge of duties resting upon him by operation of law. The parties to such a contract are in *pari delicto*; the contract will not be enforced for or against either. (*c*) Railroad companies owe a still higher duty to the State and the public, in return for the bounty of the State in granting to them a part of its own sovereignty—the right of eminent domain. *Peoria, etc., Co. v. Coal V. M. Co.*, 68 Ill. 489; *s. c.*, 12 Am. Law Reg. (N. S.) 277; *Marsh v. R. R. Co.*, 64 Ill.

414; *s. c.*, 12 Am. Law Reg. (N. S.) 390; *s. c.*, 16 Am. Rep. 564; *Chicago, etc., R. R. v. People*, 56 Ill. 366; *Pacific R. R. v. Seely*, 45 Mo. 212; *New Eng. Ex. Co. v. R. R. Co.*, 57 Me. 188; *s. c.*, 2 Am. Rep. 31; *State v. R. R. Co.*, 29 Conn. 538; *Thomas v. R. R. Co.*, 101 U. S. 71; *York, etc., R. R. Co. v. Winans*, 17 How. 30. These cases settle the law that contracts by railroad companies, which might affect their decision or action in the discharge of their duties to the public, and which might prevent the free and unbiased discharge of their duties to the public in any respect, from time to time, are *ultra vires*, vicious and void.

The construction given to the contract in question by plaintiff, and upon which it asks to maintain the action, is, that the railroad company covenanted that no other ferry or persons than plaintiff should ever be employed, and no other means used by which persons or property should be transported to or from the city of St. Louis than plaintiff's ferry—claiming that the railroad company has thus bartered away its powers and its corresponding duties to use all proper efforts from time to time to accommodate the increasing demand of trade and travel upon its road, and has bargained that the public, in using its road, should not have the cheapest, most convenient and most desirable mode of transit across the river, to and from St. Louis. Upon this construction alone does the plaintiff claim any breach of the contract. There is no complaint that any persons or property have been crossed over the river, going to or coming from defendant's road, at the point of plaintiff's ferry, by any other means than plaintiff's ferry. The claim is, that the demands of trade and shippers requiring the transfer of cars in bulk to and from St. Louis, defendant permitted such transfers, when required by its patrons, to be made at the Madison County Ferry. The construction given to the contract by the plaintiff is, that in thus serving the public, in permitting the transfer of property in cars in bulk when required by shippers, by a ferry beyond the limits of the plaintiff's franchise, there is a

breach of the contract, claiming that defendant contracted that it never would permit any transfer of persons or property across the river, to or from St. Louis, at any other point than the plaintiff's ferry, or in any other mode than that which the plaintiff might use. Thus construed, this contract is more flagrantly vicious than any of those passed on in the cases cited above.

*John M. Woodson*, also for respondent, argued, 1st, That the exceptions to the referee's report were good and sufficient, and should not have been disregarded as being too vague or indefinite; and, 2nd, That the report is not sustained by the evidence. Upon the first point he cited Edwards on Referees, 149, 17, 14; *Scranton v. Baxter*, 4 Sandf. (S. C.) 5; *Levert v. Redwood*, 9 Port. 80; *Neal v. Billing*, 1 Dickens 93; *Butler v. Truslow*, 55 Barb. 294; *Finch v. Parker*, 49 N. Y. 1; *Watson v. Campbell*, 28 Barb. 421; *Roberts v. Carter*, 28 Barb. 462; *Green v. Brown*, 3 Barb. 119; *Frost v Smith*, 7 Bosw. 108; *Hatch v. Fogerty*, 7 Robt. 488; *Mayor v. Erben*, 10 Bosw. 189; *s. c.*, 24 How. Pr. 358; *Magie v. Baker*, 14 N. Y. 438; 1 Tidd's Prac., 570, 571; Ib. Appendix, CXXII, § 47; *Hawkins v. Bradford*, 1 Caines 160; Edwards on Referees, 129, 142; Wag. Stat., 1041, §§ 17, 18; *Perry v. McGuire*, 31 Mo. 287; *Brooks v. Christopher*, 5 Duer 216; *Dainese v. Allen*, 14 Abb. Pr. (N. S.) 363; *Cowen v. West Troy*, 43 Barb. 48; *Hunt v. Bloomer*, 13 N. Y. 341; *Lefler v. Field*, 50 Barb. 407; *Newell v. Doty*, 33 N. Y. 83; *Wheeler v. Billings*, 38 N. Y. 263; *Branger v. Chevalier*, 9 Cal. 353; *Johnson v. Whitlock*, 13 N. Y. 345; *Lawrence v. Fowler*, 20 How. Pr. 407; *Ketchum v. Clark*, 22 Barb. 320; *Rogers v. Beard*, 20 How. Pr. 98; *Austin v. Ahearne*, 61 N. Y. 11; 2 Dan. Ch. Prac., (Perk. Ed. 1865) 1314; *Adams v. Claxton*, 6 Ves. 226; *Bick v. Motly*, 2 M. & K. 312; *Brodie v. Barry*, 1 Jack. & Walk. 450; *Ottey v. Pensam*, 1 Hare 322; *Massey v. Moss*, 1 Hare 319; *East v. East*, 5 Hare 343; *Ballard v. White*, 2 Hare 158; *Ashton v. Lord Langdale*, 20 L. J. Eq. 234; *Daubeny v. Coghlan*, 12

Sim. 507; *McMahon v. Burchell*, 1 Coop. 470; *In re Rowland*, 1 Chan. App. 421; *Davidson v. Thirkell*, 3 Grant Ch. 331; *Shore v. Coons*, 24 Mo. 556; *Ely v. Ownby*, 59 Mo. 437; *O'Neill v. Capelle*, 62 Mo. 203.

C. *Beckwith*, also for respondent.

1. The contract did not preclude the respondent from transporting railway cars, loaded with freight or occupied by passengers, to or from the shore to the river, or from employing others to do so, nor from ferrying, or employing others to ferry in any mode between places where the appellant had no ferry, and had no right to have one, nor did the agreement preclude the respondent from employing any ferry service not in existence when the agreement was made, and which the appellant did not agree to perform, and has never been able to perform. *Mildmay v. Standish*, Croke Eliz. 35; *Hewitt v. Painter*, Bulstrode 175; *Proprietors, etc., v. Hoboken Co.*, 1 Wall. 116; *s. c.*, 13 N. J. Eq. (2 Beasley) 81.

2. The circuit court erred in holding that the contract precluded the respondent from transporting persons and property, from employing others so to do, between places to and from which the appellant had no legal right to transport the same, and that such construction of the contract would not render it void as against public policy. *Fuller v. Dana*, 18 Pick. 472; *Pacific R. R. Co. v. Seely*, 45 Mo. 212; *P. & R. I. R. R. Co. v. Mining Co.*, 68 Ill. 489; *Marsh v. Fairbury R. R. Co.*, 64 Ill. 414; *State v. Hartford & N. H. R. R. Co.*, 29 Conn. 538; *Raphael v. Railway Co., L. R.*, 2 Eq. Cas. 37; *Bank v. Adams Ex. Co.*, 93 U. S. 174.

3. The circuit court erred in holding that the contract sued upon, obliged the respondent not to transport across the river, to or from Venice, cars laden with freight, and that such construction of the contract would not render it void as an unreasonable restraint of trade. *Oregon S. N. Co. v. Winsor*, 20 Wall. 64.

26—73

4. Appellant cannot maintain an action at law against respondent for the non-observance of those provisions of the contract requiring the employment of appellant, and the non-employment of others. A covenant to do or refrain from doing an act, not affecting the mode of enjoyment, nor the value of the land demised, is a personal one and does not bind the assignee. *Mayor of Congleton v. Patterson*, 10 East 130; *Flight v. Glossopp*, 2 Bing. (N. C.) 125: *Masury v. Southworth*, 9 Ohio St. 348; *Wiggins F. Co. v. O. & M. R. R. Co.*, 94 Ill. 83; 2 Platt on Leases, 400.

NORTON, J.—Upon the trial of this cause in the circuit court plaintiff obtained judgment for the sum of $107,-255.40, from which defendant appealed to the St. Louis court of appeals, where the said judgment was reversed, from which plaintiff has appealed to this court.

The action of plaintiff is for the recovery of damages for alleged breaches of a contract entered into between plaintiff and the Alton & St. Louis Railroad Company on the 28th day of April, 1864, which contract, on the day it was executed, was assigned to the Chicago & Alton Railroad Company, the defendant in this suit. The questions decisive of the case and presented by the record for our determination are: 1. Is the defendant, as assignee of the contract sued upon, liable to an action by plaintiff for any breach of it? 2. Is the contract *ultra vires*, condemned by public policy, or in restraint of trade? 3. Does the contract obligate plaintiff to transfer passengers and freight brought to its boats loaded in cars, as well as passengers and freight loaded in omnibuses, wagons, drays, etc.? 4. Was error committed in not receiving as evidence certain way-bills and manifests offered by defendant? 5. Did the court err in overruling defendant's exceptions to the report of the referee or in refusing to set it aside? 6. Was the right rule applied in the measurement of damages?

It is claimed by counsel that, as plaintiff and the Alton & St. Louis Railroad Company were the only parties

1. LIABILITY OF AS-
SIGNEE OF A CON-
TRACT.
executing the contract sued upon, no liability attached to defendant, the Chicago & Alton Railroad Company, as the assignee of the contract, upon the covenants therein contained, because such covenants do not run with the land, but are simply collateral thereto. If nothing else appeared but the fact that the Alton & St. Louis Railroad Company, which acquired rights in the lands mentioned in the contract, had assigned the contract to defendant, the rule invoked by counsel might be held to apply; but in the light of other facts disclosed by the record it is inoperative in this case.

From an averment made in the petition, and not denied by the answer, the fact appears that the contract in question was entered into by the Alton & St. Louis Railroad Company at the special request of the Chicago & Alton Railroad with an agreement then perfected between the said two companies, that it should be assigned to defendant. The fact also appears on the face of the contract that it provides in express terms that the "Alton & St. Louis Railroad Company shall have the right to transfer and assign this agreement to the Chicago & Alton Railroad Company, in which event all the covenants, stipulations and agreements herein above contained, shall be as binding on the Chicago & Alton Railroad Company as the same are now on the Alton & St. Louis Railroad Company." It further appears that in pursuance of the above stipulation the contract was assigned to defendant on the same day it was executed, which assignment is attached to the contract, and expressly provides that defendant was to take it "*subject, nevertheless, to the rents and covenants in said agreement contained.*" The acceptance by said defendant of said contract under this assignment, which is made in conformity with the terms and on the very condition on which plaintiff assented it might be made, fixes the liability of defendant. This has been expressly decided in the case of *Heim v. Vogel*, 69 Mo. 529, where it was held that if B, as grantee, accepts a deed from A containing a recital that

the property was conveyed subject to a deed of trust made to secure a·debt to C, and that B assumed or agreed to pay the same, the effect of such recital was to make the debt due to C the debt of B, and render B personally liable therefor; that by the acceptance of the deed a duty is imposed upon B, and the law implies a promise that he will perform it, on which, in case of failure, assumpsit will lie. To the cases cited in the opinion in the above case, sustaining the principle announced, the following may be added: *Aikin v. The Albany R. R.*, 26 Barb. 289; *Patchin v. Swift*, 21 Vt. 298; *Attix v. Pelan*, 5 Clark (Iowa) 336; *Burton v. Wells*, 30 Miss. 689. The liability of the defendant, the Chicago & Alton Railroad Company, being thus established, for any failure to comply with the stipulations of the contract, we will speak of it, in what is hereafter said, as a party to it.

Is the contract *ultra vires*, condemned by public policy or in restraint of trade? The solution of this question involves a consideration of the powers and relations of the two corporations making the contract, as well as a construction of the contract to ascertain the obligations it imposed on the respective parties. The fact that the Chicago & Alton Railroad Company, by virtue of its charter and various acts of the legislature of the state of Illinois, (which it is unnecessary here to recite,) was invested with rights and charged with the duties of a common carrier in the carriage of persons and property to, from and between its terminal points, viz: Chicago and a point on Bloody Island, on the Illinois shore of the Mississippi river, opposite the city of St. Louis, is not controverted. Without reviewing the various acts of the legislatures of the states of Illinois and Missouri relating to the incorporation of the Wiggins Ferry Company, it will be sufficient to say that they gave it the privilege of operating a ferry over the Mississippi river between the city of St. Louis and the Illinois shore of said river opposite said city, the said company being restricted to

2. RAILROAD COMPANIES: power to contract with connecting lines.

keeping a ferry or ferries at any point or points on the lands owned by the company on the Illinois ·shore, with the right to remove the same from place to place on said lands as necessity or convenience might require.

Before the railroad company could exercise the rights conferred or discharge the duties imposed upon it by its charter, it was indispensably necessary for it to acquire, either by condemnation or contract, a right of way for its tracks and grounds for a depot and other purposes incident to its business; and to accomplish these ends it had the power to contract with the owner of the land which it desired to appropriate to such uses. The Wiggins Ferry Company owned the desired lands, and under its charter had the power to dispose of them by contract, and also to contract for the ferrying of persons and property going to or coming from St. Louis over the Mississippi river. The contract in suit, which grew out of these relations existing between the parties to it, declares that the object sought to be accomplished·by it and prompting its execution, were two, viz: First, To secure permanently to the Wiggins Ferry Company " the ferrying business between the Illinois and the Missouri shore opposite the city of St. Louis of all the freights and passengers carried or to be carried by the Alton & St. Louis Railroad Company, and the further sum of $2,500 per annum to be paid by the said railroad company." Second, To secure to the Alton & St. Louis Railroad Company " proper facilities for depot grounds for the operation and doing of the business of their road at a western terminus on the Mississippi river opposite to the city of St. Louis." That both plaintiff and defendant had the right to secure to themselves respectively, by contract, these objects, we think is clear; and we cannot, therefore, declare from anything appearing on the face of the contract that it is *ultra vires*, but must hold it to be valid, unless it is shown, either by the contract itself or by extrinsic evidence, that they so contracted in securing these objects as to impose obligations on themselves which are either

against public policy, or in restraint of trade, or which involve an abandonment of some duty which is due the public from the party obligated, in which event it would be our duty to declare it void.

None of these objections apply to the provisions of the contract transferring to defendant rights in lands of the Wiggins Ferry Company, whereby defendant acquired interests therein which enabled it fully and completely to accomplish the object it had in view in entering into the contract to rent depot grounds on Bloody Island and a right of way from the east end of said depot grounds northwardly toward the town of Brooklyn; nor do they apply to the obligation of plaintiff, whereby it bound the Wiggins Ferry Company "to furnish and maintain good and convenient wharf boats and steam ferry boats to do, with promptness and dispatch, all the ferrying required for the transit of passengers and freight coming from or going to said railroad (or the assignee hereinafter mentioned) over the river."

When the fact is considered that defendant, with one terminus of its road at Chicago, and the other at a point 3. EXTENT OF THE CONTRACT OF 1864 on the Illinois shore of the Mississippi river BETWEEN THE WIGGINS FERRY COMPANY AND THE CHICAGO & ALTON RAILROAD COMPANY. opposite the city of St. Louis, was necessarily dependent, for the successful operation of its road and business, on the facilities which it might afford for the passage over said river of persons and property destined either for St. Louis or points beyond —or coming to it from St. Louis destined either to Chicago or to points intermediate and beyond, it was in the interest not only of defendant, but of the public, that it should secure to itself these facilities. That these facilities were secured to defendant by the contract in question cannot be controverted, and that it had the power to make the contract by which it secured them is shown by Hutchinson on Carriers, section 145, and following sections, and by the case of *Wheeler v. San Francisco R. R. Co.*, 31 Cal. 46,

where the authorities sustaining the power are extensively cited.

But it is insisted that defendant, in securing them, obligated itself to do what is forbidden by public policy, and *4. A CONTRACT HELD NOT VOID AS AGAINST PUBLIC POLICY, OR IN RESTRAINT OF TRADE* what is in restraint of trade, by agreeing that it "will always employ the said ferry to transport across said river all persons and property which may be taken across the said river either way to or from the Illinois shore, either for the purpose of being transported on said railroad or having been brought to the said river Mississippi, upon said railroad, so that said ferry company    *    *    shall have the profits of the transportation of all such passengers, persons and property taken across said river either way by the said railroad company, and that no other than the Wiggins Ferry shall ever, at any time, be employed by the said party of the second part, or the assignee herein mentioned, to cross any passengers or freights coming or going on said road." Keeping in view the fact expressed in the contract that one object in making it was to secure to plaintiff "the ferrying business between the Illinois shore and the Missouri shore opposite St. Louis of all passengers and freight carried, or to be carried," by defendant, and that the above stipulations were inserted to carry out this object, and construing the contract in its entirety, giving to the words employed therein their usual signification, without twisting them from their natural meaning in the relation they bear to the object referred to, we are of opinion that defendant bound itself to give to plaintiff for ferrying over the Mississippi river all passengers and freight brought by it to the Illinois shore opposite the city of St. Louis to be crossed over to said city, and all passengers and freight taken from St. Louis for carriage by defendant on its road northward.

If the design of the contracting parties had been to limit the obligation of defendant to give to plaintiff for ferrying, and limit the right of plaintiff to have for ferrying

only such freight as might go or come over Bloody Island, it should have been so expressed, and it could have been unmistakably expressed by the simple addition of the words "Bloody Island" to the words "river and Illinois shore," where they occur in the above recited clauses of the contract. This was not done. No words restricting the obligation of defendant to furnish freights for ferrying, or restricting plaintiff's obligation to ferry only such freights as might go or come to the Illinois shore over Bloody Island, are to be found in the contract, and we are not authorized by any rule to interpolate or insert in the contract words which the contracting parties themselves not only did not put there, but which, as we think, were intentionally omitted. The Wiggins Ferry Company, by virtue of its charter, and independent of the contract, had the exclusive right to ferry freights across the Mississippi river to and from Bloody Island, and the construction contended for by counsel, that the contract secured to plaintiff the right to demand of defendant only such freight as it might bring to a point on Bloody Island, would involve the unreasonable conclusion that plaintiff was willing to transfer, and in fact did transfer to defendant property rights estimated by one witness to be of the value of $130,000, to secure to itself a right which it already had and of which defendant could not deprive it.

If the contract is to be viewed in the light of the circumstances surrounding the parties at the time of its execution, the construction we have given it is fortified and sustained. It is shown by the evidence that at the time it was entered into there were three ferry companies doing business under their respective charters from the Illinois shore opposite St. Louis, viz : The St. Clair County Ferry, south, and the Madison County Ferry, north of the Wiggins Ferry Company. According to the evidence of Mr. Bisdom, the Wiggins Ferry Company had a frontage on the Illinois shore of said river opposite St. Louis, of about two and a half miles ; this frontage included not only

The Wiggins Ferry Company v. The Chicago & Alton Railroad Company.

Bloody Island, but also extended south of it and north of it up to or near the line dividing the counties of St. Clair and Madison, and within 3,200 feet, or about five-eighths of a mile, of the Madison County Ferry at the town of Venice. The Wiggins Ferry Company had, by its charter, the exclusive privilege of maintaining and operating a ferry to and from any point or points on this frontage, and the other two the same right confined to the frontage on said shore respectively owned by them. On the other hand defendant had the right to give to either of these companies the ferrying across said river brought by it to the Illinois shore. If it brought its freight to said shore at any point embraced within the said frontage of plaintiff, if passed over the river from such point, it could only be done by plaintiff, and if brought to said shore at any point embraced within the limits of either the St. Clair County Ferry or Madison County Ferry, if passed over the river from such point, it could only be done by the company in whose limits such point was embraced. In this condition of things there was no possible motive or inducement for the Wiggins Ferry Company to enter into a contract by which it would get nothing more than it already had a right to. The right of said company to ferry freight from so much of the Illinois shore as was included in its frontage having already been secured to it by its charter, its evident purpose was to obligate defendant to bring to such frontage all freight carried by it requiring ferry transportation across the said river opposite St. Louis, and that such was the extent of the obligation assumed by defendant, we have already seen.

If, as argued by counsel for plaintiff and conceded by counsel for defendant, the Chicago & Alton Railroad Company was authorized by its charter to carry passengers and freight to St. Louis, and empowered to employ and use boats for that purpose, it was its duty to do so, and the public had a right to demand of defendant the performance of this duty in

5. AVOIDANCE OF CONTRACTS AS AGAINST PUBLIC POLICY.

such manner as not to hamper trade, but so as to secure the transit over the river with facility and dispatch of all persons and property which either trade or the public interest might demand. This much, and no more, the public had a right to demand, and if it was met by the contract in question it cannot be held to be in contravention of public interest, because the public would get under it all that it had a right to. It was no concern of the public what particular ferry should be employed by defendant as an instrumentality for the prompt passage over the river of all freight and passengers requiring such transit, provided the one employed was in all respects sufficient to accomplish such purpose without imposing any additional burdens on the shipper. The obligation of plaintiff required it to "furnish and maintain wharf and steam ferry boats sufficient to do with promptness and dispatch all the ferrying of passengers and freight requiring it." . What more than this could be demanded? What right of the public was disregarded by defendant agreeing always to employ a company which it had thus obligated?

If on the other hand the southern terminus of defendant's road was on Bloody Island, it owed no duty to the public to carry freight or passengers beyond such terminus, and in making the contract in question it neither abandoned nor violated any duty to the public, because it owed it none. While defendant could not be compelled to carry beyond the terminus of its line, it nevertheless might contract, if it chose to do it, for the carriage of freight beyond such terminus, and for this purpose make a valid contract with a connecting carrier, and if it elected to make such contract it would be bound by it. Hutchinson on Carriers, §§ 147, 151, and authorities there cited; Ib., § 317; *Paradine v. Jane*, Aleyn Rep., 26, 27.

The only element of restraint of trade to be found in the obligation of defendant, is that it will never employ any other ferry but the Wiggins Ferry to transport freight from the Illinois shore, opposite the city of St. Louis, or

sent to it from said city. This restriction is not general as to space, but only partial and special, and it is only when a contract is granted for general restraint of trade that it will be held illegal and void; but it is otherwise if the restraint be partial and reasonable. *Bowser v. Bliss*, 7 Blackf. 344; *Peltz et al. v. Eichele*, 62 Mo. 171; Leake on Con., pp. 735, 736. The space in which the restriction is to operate is limited to the Illinois shore opposite the city of St. Louis, and is only a partial restraint in that space, the restriction being not that defendant will not employ any ferry at all, but that it will only employ that of plaintiff. We can not say from anything appearing in the contract that such limitation is unreasonable, and it is, not, therefore, obnoxious to the rule.

While holding the contract, as we have construed it, to be valid, yet if it is shown by extrinsic evidence to be in conflict with public policy, to that extent it must yield and give way, and it is for the defendant affirming it to be so, to show it. The salutary rule that a contract against public policy or interest will not be enforced, was adopted to conserve the best interests of society and the state, and a party who invokes it as a shield behind which to hide and protect himself against the damages attachable to the breach of a contract, especially when such party is in the full and free enjoyment of all the fruits of the contract, must make it clearly manifest to the mind of the court that the obligations imposed by it are condemned by the rule. In the case of *Bryant v. Fairfield*, 51 Me. 146, it was held that it is not for a party who retains the consideration of the contract, to invoke the rule that the contract is against the policy of the law. While not willing to go to the extent of that case and say that a party in the enjoyment of all he was to get in consideration of a promise made by him to another, should not be allowed, when sued for a breach of such promise, to plead that it was against public policy, we may safely say, without infring-

*6. TRANSPORTATION CONTRACTS: improvements in methods of transportation; parties bound to adopt them.*

ing upon any rule of common honesty, justice or right, that to make such plea effectual, he should restore, or be required to restore, all that he received as a consideration for the promise which he thus seeks to avoid. The fact that defendant entered into the possession of the lands it was to get under the contract immediately after its execution, laid its track, built its depot, and has ever since had the full and uninterrupted enjoyment of the same is conceded; the fact that from 1864 up to May or June, 1869, no discovery had been made that the contract in question was against public policy, and that during that time defendant gave to plaintiff for ferrying all passengers and freight going to or coming from St. Louis, on or for its road, is also conceded.

The fact that since that time all freight carried by defendant loaded in its cars and transferred without breaking bulk, was transferred, not by the Wiggins, but by the Madison County Ferry, is also conceded, and it is this car transfer so made of which plaintiff complains, and which it sets up as a breach of defendant's contract. But the fact that such transfer constituted a breach of the contract is denied by defendant, who claims, first, that the contract did not embrace car transfer, that such method of transfer was not used by plaintiff at the time it was entered into, and was not, therefore, contemplated by the parties; second, that if embraced, the public interest demanded car transfer at the Madison County Ferry, which could not be met by the Wiggins Ferry, and that, in this conflict between the obligation of defendant and public interest, the obligation yields and ceases to be enforceable.

While it is true that plaintiff and defendant may be presumed to have contracted with reference to the condition of things existing at the time the contract was made, it is equally true that they must be presumed to have contracted with reference to the fact that if, in the future, other methods than those then in use, for the transfer of passengers and freight from the rail ter-

minus of defendant's road to plaintiff's boats, and improved methods in the construction of boats for the reception of such freight should be invented, and proved by trial to be more efficacious as to cheapness, safety and dispatch than those then in use, it would be the duty of plaintiff to adopt them upon the requirement of defendant.   Hutchinson on Carriers, § 529; *Meier v. Penn. R. R. Co.*, 64 Pa. St. 225 ; *s. c.,* 3 Am. Rep. 581.   We think it cannot reasonably be claimed that if an improved method had been invented in applying steam power in propelling ferry boats, whereby the transportation of freight and persons would have been cheapened and facilitated, defendant, under the contract, could not have demanded its adoption, and that it would not have been the duty of plaintiff to have complied with it.   The obligation assumed by plaintiff to ferry all freight requiring to be ferried is unrestricted and broad enough to cover freight brought on to its boats loaded in cars propelled by steam, as well as freight brought to them loaded in wagons drawn by horses and mules.   If the ferrying of freight loaded in cars without breaking bulk had been demanded by defendant because it was cheaper, safer and more expeditious than transfer by parcels, it would have been the duty of plaintiff to have provided boats to meet the demand.   If the defendant, in the interest of the public, and its own, desired to avail itself of such improved method, it should have signified its desire to plaintiff and afforded it an opportunity to furnish the proper facilities by conforming its boats to such method.

If defendant owed a charter duty only to the public to provide means of transit across the Mississippi, and the evidence in the case showed that the public interest could not have been as well served by car transfer at the Wiggins as at the Madison County Ferry, an excuse might be found for defendant's failure to make such demand, and a reason offered why its obligation to defendant should not be enforced.   We think the evidence fails to show this.   It shows that defendant, on the 9th day of

March, 1866, entered into a written ·agreement with the Madison County Ferry, which had its landing at the town of Venice about five-eighths of a mile from the most northern point where the Wiggins Ferry had a right to land, and about two miles from the Wiggins Ferry landing on Bloody Island, in which agreement defendant secured to itself depot grounds, right of way for switching tracks and right to build a grain elevator on the land acquired; it also secured an obligation from the Madison County Ferry at all times to keep and maintain ferry boats sufficient to accommodate all the business and traffic of defendant's road which of necessity should be done by ferry boats at that point, and to do such ferrying at prices not to exceed those charged for similar service by other ferry companies engaged in like business at or near the premises therein conveyed. Defendant bound itself to use the property conveyed for the uses therein expressed, also to establish a local station at the town of Venice, a small village, whose metropolitan proportions are not shown, situated about two miles north of the rail terminus of defendant's road at East St. Louis, and from time to time to erect at said station such buildings for freight and passenger traffic as might be necessary for the accommodation of business at that point. Said agreement also contains the following stipulations:

" And the said party of the second part (the railroad company) hereby further covenants and agrees to and with said first party that it, the said second party, will not at any time hereafter establish, or attempt to establish, for its own use, or aid or assist in the establishment or maintenance of any other ferry company intending to compete with the party of the first part for the ferrying business to be done from the lands of the first party in Madison county, and at said station of Venice, and that it, the said second party, will not seek to divert traffic which may be offered for said station and ferry to other points on the line of the railroad now operated by it, the said second party, and

that it, the said second party, will, at all times during the continuance of this agreement, offer the same facilities and accommodation to parties desiring to do business either to or from said station as are by it, the said second party, afforded to parties who ship freights to or from other points on the line of the railroad now operated by said second party.   And the parties hereto mutually covenant and agree that in case it shall at any time hereafter be deemed advisable to adopt a method of transporting freights and passengers across the Mississippi river at said station differing from the method now existing and in use, and that, by reason of such change in said mode of transferring freights and passengers, it shall become necessary to construct a new landing specially adapted to such new mode of transfer at said station, then and in that case the said party of the second part shall and will, at its own proper cost and expense, erect and construct such new landing at some point on the river front of the premises hereinbefore granted and conveyed to said second party by the first party, and below the present landing of the party of the first part, and that said second party shall and will in such case build and maintain all tracks and other appurtenances which shall be necessary and proper to render the said new landing so to be constructed as aforesaid available for the purpose of the new mode of transfer aforesaid.   And the said first party agrees in such case that it will so alter and construct the ferry boats at that time in use by said first party that the same shall be by such alteration and construction adapted to the new mode of transfer so adopted as aforesaid, and capable of amply accommodating all the business which may be offered at said station of Venice by reason of such change in the manner of transacting the same as aforesaid."

The evidence also shows that in May or June, 1869, car transfer was introduced at the Madison County Ferry at Venice, and that defendant prepared, at its own cost, the said landing stipulated for, and also switch tracks

for transfer of cars to the boats of said ferry, and that ever since that time whenever freight in cars was passed over the river, it was done by said ferry ; that said cars so transferred were first carried through the town of Venice to the terminus of defendant's road in East St. Louis, and the freight destined for St. Louis or beyond, if not billed to St. Louis via Venice, was detained to await orders as to how it should be shipped across the river, whether by car transfer at Venice or parcel transfer in loaded wagons at the Wiggins Ferry. If such freight was ordered to be sent by the Venice Ferry, the order was obeyed, and such cars, as well as cars containing freight billed to St. Louis via Venice, were sent back to Venice, a distance of about two miles, and switched onto a track connecting with the Venice car transfer boat at a cost of $1.50 per car, and when loaded on such boat, if it landed on the St. Louis side at Carr street, the distance which it traveled was about two miles, or if it landed at Chouteau avenue or the depots of the Iron Mountain and Pacific Railroad Companies, the distance was about four miles. The evidence shows that the Wiggins Ferry Company introduced car transfer in the summer of 1870, and that thirteen out of fourteen railroads used its car transfer boats, and the distance traversed to make its landing at said Carr street was about 700 yards, and the distance to make its landing at said Chouteau avenue was about two miles. While the evidence showed that defendant, in consequence of the steepness of the grade, could not extend its track in a direct line to plaintiff's transfer boats, it also showed that an extension and connection could have been made by a curved line. Mr. Bisdom testified that there was no difficulty in making approaches for the Chicago & Alton by a curved line. Mr. Smith, a railroad engineer of ten or twelve years' experience, testified that he was familiar with car transfer approaches at East St. Louis, and that one could be well made from the Chicago & Alton track on a sixteen degree curve and 300 foot radius. Mr. Clubb testified that

the track of the Chicago & Alton, from its depot at East St. Louis to Brooklyn, runs parallel with the river, in some places within 250 feet of it; that between it and the river there is open ground, and that there was no reason why the Chicago & Alton could not, with a track of 1,200 feet, connect with the Wiggins transfer at the south line of the town of Brooklyn.

The evidence also shows that on the 18th day of April, 1870, the following circular was issued:

"CHICAGO & ALTON RAILROAD Co., April 18th, 1870.

"*Instructions to Agents:* Complaint has been made to this company by the Wiggins Ferry Company of St. Louis, that its agents have, contrary to former instructions issued them on this subject, in some cases forwarded freight sent to and from St. Louis, by way of Venice, in Madison county, without instructions from the shipper or consignee so to do. You are, therefore, specially instructed, in all cases without exception, where goods are delivered to this company for transportation to and from St. Louis, and no direction is given you by the person or persons controlling the same as to the route by which the same shall be sent, to way-bill such goods to or from the city of St. Louis, via East St. Louis. In cases where the person or persons controlling the goods delivered to this company for transportation to and from St. Louis, give orders that such goods shall be sent via any other point than East St. Louis, you are instructed to send the same according to the orders given, and in every case to note the directions of the shipper on the way-bill accompanying the goods and on the bill of lading delivered to the shipper. Agents are positively forbidden to use any attempt to influence shippers or other persons controlling the direction of freight either to or from St. Louis, in favor of any particular route, but in every case to leave such parties entirely free to ship by whatever route they may choose, without any interference

27—73

on their part or attempt to control the direction of such freights.

"T. B. BLACKSTONE, President.

"J. C. McMULLIN, General Superintendent."

In the light of these facts, we are satisfied that public interest could not only have been as well but better served by car transfer at the Wiggins than at the Venice ferry, and that the contract of 1866 between the defendant and the Madison County Ferry was in fraud of the rights of plaintiff under the contract of 1864, and made in the interest of defendant and not in the interest of either the public or the shipper.  We cannot resist the impression which the above facts have made upon our minds; that they evince a purpose on the part of defendant how not to perform its contract with the Wiggins Ferry Company, so as to evade the obligations it imposed, and at the same time to retain all the benefits it received under it.  While we recognize the right of the shipper to direct the route by which his goods shall be carried, and the corresponding duty of the carrier to obey the direction, we do not think the principle can be invoked by defendant in this case to relieve it from responsibility incurred under the contract of 1864, for the reason that the evidence tends strongly, if not conclusively, to show that the defendant, by its action in the premises, had reduced the shipper to the necessity of electing to take either wagon or piece transfer at the Wiggins ferry, or car transfer at the Venice ferry, and thus forced the shipper to accept car transfer at Venice, thereby subjecting his goods to transportation on the water a distance twice as great as that to which they would have been subjected if transferred by the Wiggins ferry.

In this view of the case the question as to whether the way-bill copy-books and manifest copy-books offered in evidence ought or not to have been received, is immaterial. The purpose for which they were offered was to show that the defendant was directed by the shipper to use the Venice

ferry in making car transfer, and acted in obedience to such orders. If the evidence offered would have established the above facts, still, in view of the further fact already established, that defendant, by declining to have car transfer at the Wiggins ferry, when the evidence shows it could have been had with more facility than at Venice, and defendant, under its contract with plaintiff, was bound to provide for it, had reduced the shipper to the necessity of taking car transfer at Venice, where it had been provided at the instance and suggestion of defendant in disregard of its obligations to plaintiff, defendant cannot be heard to say that it violated its contract by direction of the shipper. The choice of the shipper having been thus compelled by defendant, it is as much bound by the act as if it had directly controlled the transfer. Defendant cannot be heard to say that *it did not*, but that the *shipper did* control the car transfer at Venice, when it is clear from the evidence that such control by the shipper was brought about and forced upon him by the wrongful act of defendant in not regarding the obligations of the contract with plaintiff.

While the exceptions made to the report of the referee might well have been overruled on the ground that they were not so specific as to inform the court in what particular the report was unsustained by the evidence, nor wherein it was against the law and instructions of the court, nor what incompetent evidence was rejected by the referee, still if we consider, as contended for by counsel, that the exceptions were sufficiently specific to require the court to look into the evidence on which the report was based, we are of the opinion that the trial court did not err in overruling the exceptions, inasmuch as there was evidence tending to establish every fact found by the referee. It has been held by this court in the cases of *Western Boatman's Benev. Asso. v. Kribben*, 48 Mo. 37, and *Franz v. Dietrick*, 49 Mo. 95, that the report of a referee is equivalent to a special verdict and will not be disturbed on appeal as being against the weight of evi-

9. REFEREE'S REPORT.

dence; that we will not go into a consideration of the suf-
ficiency of the evidence to support the finding of the referee.
" The finding of the referee stands as the verdict of a jury,
and where there is any evidence to sustain it we will suppose
that the whole evidence was properly weighed and the
requisite effect given it."

The referee in his report gave to plaintiff as damages
the profits for ferrying all cars transferred by the Venice
10. CONTRACT : ferry containing freight received and billed
measure of dam-
ages.          for carriage over defendant's road at places
or for destinations beyond the terminus of its road.   The
referee, in thus acting, adopted the rule laid down by the
trial court in giving its judgment, where it is said that
" the conclusion reached, therefore, is, that the proper con-
struction of the agreement required the defendant in all
cases where it engaged in contracts for the transportation
of persons or property beyond the terminus of its road,
and the execution of such contracts required the employ-
ment of a ferry between St. Louis and the Illinois shore, to
employ the ferry of plaintiff, and in whatever instances the
defendant has failed to do this it is liable for all profits lost
to it by reason of such failure, and this applies as well to
freights in bulk or cars as in parcels or packages."   In
view of the fact that defendant obligated plaintiff always
to keep sufficient ferry boats and appliances to do all the
ferrying of persons and property required to be done, and
the fact that plaintiff had fully complied with its obliga-
tion and had incurred all the expense of time, money and
labor to carry the required freight, the above rule for the
measurement of damages was fully authorized.   *Pond v.
Wyman*, 15 Mo. 183; *Nearns v. Harbert*, 25 Mo. 352.

The instructions given by the court show that the cause
was tried upon a view of the case more favorable to de-
fendant than that which we have taken of it, and upon full
examination of the record we are unable to perceive that
any error was committed against the defendant, and will,

therefore, reverse the judgment of the court of appeals and affirm that of the circuit court, in which all the judges concur.